## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **EDWARD G. SANDERS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:22CV00355 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **ISRAEL HAMILTON, ET AL.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |

*Edward G. Sanders, Pro Se Plaintiff; Timothy E. Davis,* OFFICE OF THE ATTORNEY GENERAL, *Richmond, Virginia, for Defendants.*

The plaintiff, Edward G. Sanders, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, alleging that the defendant prison officials did not accommodate his request to participate in the Ramadan fast in 2022, in violation of his rights to free exercise of his Muslim religious beliefs under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq.* After review of the record, I conclude that the defendants' Motion to Dismiss must be granted in part and denied in part.

### I.   BACKGROUND.

The yearly celebration of the month-long Muslim Ramadan fast began on April 2, 2022.[1] Approximately six months before that date, Sanders arrived at Keen

---

[1]  The summary of facts in this Opinion come from the Complaint and are accepted as true for the purposes of determining the Motion to Dismiss.

Mountain Correctional Center (KMCC).  Officials added him to the "Jumah list to pray every Friday."  Compl. 2, ECF No. 1.  His Muslim beliefs also require him to practice the Ramadan fast, as he did in 2021 at his prior prison facility.

Sanders claims that the KMCC chaplain told him inmates would have to sign up for the Ramadan celebration by March 17, 2022.  Sanders filed a request form for Ramadan participation on March 10, 2022.  When he received no response, he filed an Informal Complaint on March 19, 2022, asking to be added to the Ramadan list. On April 1, 2023, Sanders received a response from KMCC Program Manager Meadows, stating that Sanders had missed the posted March 1, 2022, deadline to sign up for Ramadan participation.  Meadows explained that the March 1, 2022, deadline had been set by prison officials in Richmond, that memos about the deadline had been posted by February 7, 2022, and that Sanders had not followed the rules that other inmates had been able to follow to submit timely requests for Ramadan participation.  Meadows noted that he had received the complaint form on March 22, 2022.

On April 3, 2022, Sanders filed a Regular Grievance asking to be added to the Ramadan list.  KMCC Grievance Ombudsman Breeding rejected it as a request for services and indicated that the signup deadline had passed.  Sanders appealed.  On April 12, 2022, Sanders received a response from Regional Ombudsman Parr upholding the decisions by Meadows and Breeding.

On April 20, 2022, Sanders filed a request form with Meadows about Ramadan signups.  Meadows responded, "[Y]ou should know when your holy days are celebrated."  *Id.* at 3.  Sanders asserts that the memo about the signup deadline was not posted in a locked cabinet.  It was taped on the wall beside the cabinet where other inmates could and did tear parts off "until it was all gone."  *Id.*  On April 21, 2022, Sanders filed a Regular Grievance making this complaint.  Breeding rejected it as a request for services and noted that the signup deadline had passed.  On appeal, Parr upheld this intake decision.

Sanders asserts that Meadows received his Informal Complaint at least thirteen days before the start of the Ramadan fast but failed to accommodate Sanders' request to participate in the fast.  Sanders also complains that he filed his Regular Grievance just one day after the fast began, but Breeding and Parr did not allow him to belatedly join the Ramadan participation.  Sanders appears to argue that the defendants, including KMCC Warden Hamilton, should have known from Sanders' history of participating in Ramadan at other prisons and his attendance of the weekly Jumah practice at KMCC that his religious beliefs required him to participate in the Ramadan fast.

In this case, Sanders sues Meadows, Breeding, Parr, and Hamilton, seeking declaratory and monetary damages.  The defendants have filed a Motion to Dismiss, and Sanders has responded, making this matter ripe for consideration.  Sanders has

also filed a separate motion seeking interlocutory relief regarding Ramadan 2023 to which the defendants have responded.

## II. ANALYSIS.

A district court should dismiss a complaint under Rule 12(b)(6) if, accepting all well-pleaded allegations in the complaint as true and drawing all reasonable factual inferences in the plaintiff's favor, the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.[2] To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.

As an initial matter, some of Sanders' claims for monetary damages fail at the outset. The defendants are protected by immunity against damage claims for actions taken in their official capacities. *Will v. Mich. Dep't of State Police*, 491 U.S. 58

---

[2] I have omitted internal quotation marks, alterations, and citations here and throughout this Opinion, unless otherwise noted.

(1989).  And RLUIPA does not authorize suits for money damages against prison officials, either in their individual capacities, *Rendelman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009), or in their official capacities, *Sossamon v. Texas*, 563 U.S. 277, 285–86 (2011).  Thus, Sanders may only seek prospective, equitable remedies with respect to his RLUIPA claims.  *Wall v. Wade*, 741 F.3d 492, 496 n.5 (4th Cir. 2014).  His Complaint did not request any injunctive relief.  Therefore, I will grant the Motion to Dismiss as to all claims against the defendants in their official capacities and as to the claim for monetary damages under RLUIPA.

Sanders' request for declaratory relief also cannot be granted because it is styled retrospectively — seeking a declaration that the defendants' past actions violated his rights.  Compl. 6, ECF No. 1.  Article III of the United States Constitution permits courts to "adjudicate only disputes involving a case or controversy" that is currently active.  *Williams v. Ozmint*, 716 F.3d 801, 808 (4th Cir. 2013).  "A case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Id.* at 809.  Because Ramadan 2022 is past, Sanders' request for declaratory relief about that event does not present a live controversy, and such relief is not available under RLUIPA. *United States v. Cnty. of Culpeper*, No. 3:16cv00083, 2017 WL 3835601, at *3 n.3 (W.D. Va. Sept. 1, 2017).  Therefore, I will grant the defendants' motion as to

Sanders' claims for declaratory relief.  His claims for monetary damages under the First Amendment, however, warrant further discussion.

B.

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  To state a claim for violation of rights secured by the Free Exercise Clause, an inmate, "must demonstrate that: (1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion." *Wilcox v. Brown*, 877 F.3d 161, 168 (4th Cir. 2017).  For constitutional purposes, such a burden is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs," *Thomas v. Review Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 718 (1981), or one that forces him to "choose between following the precepts of h[is] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of h[is] religion . . . on the other hand," *Sherbert v. Verner*, 374 U.S. 398, 404 (1963).  I will assume for purposes of this Opinion that Sanders has shown that his inability to participate in the Ramadan fast in 2022 substantially burdened his sincerely held religious belief.

Even when an inmate shows that a prison regulation has placed a substantial burden on his religious practice, the inmate's right must be balanced against the state

interests in administering its prisons. *Washington v. Harper*, 494 U.S. 210, 223 (1990). "[T]he proper standard for determining the validity of a prison regulation claimed to infringe on an inmate's constitutional rights is to ask whether the regulation is 'reasonably related to legitimate penological interests.'" *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To make this determination, the court must consider four factors:

> (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right . . . remain open to prison inmates . . ."; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action.

*Lovelace v. Lee*, 472 F.3d 174, 200 (4th Cir. 2006) (quoting *Turner*, 482 U.S. at 89–92). The plaintiff carries the burden of proof under the *Turner* rational basis analysis to disprove the validity of the prison regulation at issue. *Jehovah v. Clarke*, 798 F.3d 169, 176 (4th Cir. 2015).

## C.

I must grant the Motion to Dismiss as to defendant Hamilton. Sanders appears to assert liability against this defendant based solely on his supervisory role as warden — suggesting that he is automatically responsible for his subordinates' failure to allow Sanders to participate in Ramadan. To set forth a claim for supervisory liability under § 1983, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Sanders has failed to allege facts that would establish the *Shaw* elements against Hamilton. Indeed, he does not allege facts showing that Hamilton had any personal knowledge of, or involvement in, the decision to deny Sanders' late request to participate in Ramadan. Moreover, government officials may not be held vicariously liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

I will deny the Motion to Dismiss as to the other defendants. Taking Sanders' allegations as true, as I must during this stage of the litigation, he did not receive timely notice of the Ramadan signup deadline, he asked Meadows to add him to the Ramadan list more than two weeks before the start of the fast, and he notified Breeding and Parr of his religious practice needs only a few days into the Ramadan celebration. Yet none of these defendants took steps to permit Sanders to join the religious fast. I conclude that these allegations suffice to state a viable § 1983 claim against Meadows, Breeding, and Parr for denying Sanders his right to free exercise of his religious belief. *See Conyers v. Abitz*, 416 F.3d 580, 585–86 (7th Cir. 2005)

(denying summary judgment to prison officials who summarily denied inmate's request for Ramadan participation, although he did not know the signup deadline). The record currently does not include any evidence suggesting that refusing to accommodate an inmate's belated request for Ramadan participation was rationally related to legitimate penological needs, that Sanders had any alternative means of practicing the fast, that allowing his participation would have adversely impacted prison resources, or that officials had no easy alternative to outright refusal. *Lovelace*, 472 F.3d at 200.  The defendants may address these issues in a summary judgment motion.

### D.

In January 2023, Sanders filed a separate pleading titled "Notice of Treats, Intimidation and Retaliation by Defendant," complaining that Meadows had intimidated him in retaliation for this lawsuit.  This pleading was construed and docketed as a motion seeking interlocutory injunctive relief.  Specifically, Sanders claims that Meadows told him, "I have had enough of your s***, I have a law degree, and I have a lawyer and we eat people like you up all the time. . . . You did not submit your request in time thats [sic] why you were denied and I am not afraid of you." Mot. Prelim. Inj. 2, ECF No. 16.  Sanders states that Meadows had previously denied a request from Sanders for a barber job, although Sanders previously worked as a prison barber.  Sanders states, "I feel threatened by defendant Meadows." *Id.*

Sanders also reports submitting a request on November 15, 2022, to participate in the Ramadan fast for 2023. He claims that he "was again disapproved due to a notation." *Id.* at 3. In the same motion, Sanders also complains that a lawyer's office had been calling KMCC and Warden Hamilton, to schedule a virtual video visit with Sanders, but had received no response. Sanders states that the attorney's call was "no reason to deny [his] 2023 Ramadan request." *Id.* He asks the court "to order an immediate transfer to Buckingham Correctional Center" because he "fear[s] for [his] safety" at KMCC due to this pending civil action. *Id.*

The defendants responded to Sanders' motion, supported by an affidavit from defendant Meadows, dated February 10, 2023. Meadows alleges that at that time, Sanders was on the list to participate in the upcoming Ramadan fast for 2023. He explains that he had a face-to-face conversation with Sanders in the pod area to discuss Sanders' request for Ramadan participation and his question about his attorneys' attempt to call him in prison. Meadows states that he explained to Sanders the procedures for telephoning an attorney. KMCC does not schedule video calls between inmates and attorneys because video capabilities are used for other purposes, such as parole hearings and mental health evaluations. KMCC officials encourage attorneys to set up in-person meetings with prisoner clients to discuss legal matters. If an in-person visit is not possible, the attorney may schedule an in-pod telephone call with the inmate. To set up such a call, the attorney or his law

firm must contact KMCC at least 24 hours before the intended call time and complete an Attorney Block Form that allows the call to be blocked from recording to preserve attorney-client privilege. Resp. Opp'n Mot. Prelim. Inj. Meadows Aff. ¶ 7, ECF No. 19-1. The inmate must also add the attorney to his approved phone list. After these arrangements are in place, the inmate can call his attorney from the pod phone at the scheduled time.

Meadows states that to the best of his knowledge, Sanders' attorney has not contacted KMCC to schedule a call with Sanders. Meadows attempted to call the attorney at the phone number Sanders provided to him, but no one answered. He left a message for someone to return the call, but that never happened. Meadows testifies that if the attorney contacts KMCC to arrange a call and follows proper procedure, Sanders will be permitted to make a call to that attorney. Sanders has not responded to the defendants' evidence about Ramadan 2023 or about procedures for attorney calls.

"A preliminary injunction is an extraordinary remedy intended to protect the status quo and prevent irreparable harm during the pendency of a lawsuit." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017). A party seeking a preliminary injunction must state facts clearly showing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public

interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Each of these four factors must be satisfied. *Id.*

The undisputed facts before the court do not support the required showings under *Winter*. First, Sanders has not contested the evidence that he was placed on the list to participate in the Ramadan fast in 2023. Thus, I conclude that this portion of the interlocutory relief must be denied as without merit.

Second, Sanders also has not contested the evidence that he would be permitted to call his attorney if he and the law firm follow KMCC procedures to do so. Moreover, Sanders has not alleged facts showing that his inability to speak with his attorney before following these procedures or the alleged dismissal from his job placed him at risk for any irreparable harm. For the reasons stated, I will deny Sanders' motion seeking interlocutory relief.

### III. CONCLUSION.

In accordance with the foregoing, it is **ORDERED** as follows:

1. The defendants' Motion to Dismiss, ECF No. 12, is GRANTED IN PART AND DENIED IN PART; the motion is DENIED as to Sanders' First Amendment claims that defendants Meadows, Breeding, and Parr failed to accommodate his sincere religious practice to participate in the Ramadan fast of 2022, but as to all other claims, the motion is GRANTED;

2. All claims against defendant Hamilton are DISMISSED and, the Clerk shall terminate this individual as a party to the case;

3. The plaintiff's Motion for Preliminary Injunction, ECF No. 16, is DENIED; and

4. The remaining defendants are DIRECTED to file within 28 days from the entry of this Order an Answer and any summary judgment motion, or this matter will be set for a jury trial.

ENTER:   September 12, 2023

/s/  JAMES P. JONES
Senior United States District Judge