CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

September 23, 2024

LAURA A. AUSTIN, CLERK
BY:          s/A. Beeson
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE  DIVISION

| | | |
|---|---|---|
| **EDWARD G. SANDERS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:22CV00355 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **ISRAEL HAMILTON, ET AL.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |

*Edward G. Sanders, Pro Se Plaintiff; Timothy E. Davis, Assistant Attorney General,* OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Defendants.

Plaintiff Edward G. Sanders, a Virginia inmate proceeding pro se, filed this civil rights action alleging that prison officials at Keen Mountain Correctional Center (KMCC) did not provide him accommodation for the Ramadan fast in 2022. I have already granted the defendants' Motion to Dismiss as to Sanders' claims under the Religious Land Use and Institutionalized Persons Act, all claims against defendant Hamilton, and other claims as well.[1]  *Sanders v. Hamilton*, No. 7:22CV00355, 2023 WL 5942277 (W.D. Va. Sept. 12, 2023).  The matter is now before me on the remaining defendants' Motion for Summary Judgment as to Sanders' claims for monetary damages under the First Amendment and his response

---

[1]  I dismissed all claims for injunctive relief based on evidence that Sanders was authorized to participate in the 2023 Ramadan observance at KMCC and had shown no basis to believe that his future participation would be denied.

to that motion.[2]  After review of the record, I conclude that the defendants' motion must be granted.

## I. BACKGROUND.

Sanders' Muslim religious beliefs require him to practice the Ramadan monthly daylight fast, which he had done in prison in 2021 before his transfer to KMCC.  Ramadan is a recognized religious observance for VDOC inmates who adhere to the Islamic, Nation of Islam (NOI), and Moorish Science Temple of America faiths.  Virginia incarcerated persons observing this fast will eat only during non-daylight hours throughout the month.  To accommodate this religious practice, staff arrange meal schedules to provide participating inmates with one meal before sunrise, one meal after sunset, and an additional bag meal to meet caloric needs overnight.

The dates for Ramadan vary from year to year, according to the Islamic lunar calendar.  VDOC staff verify the beginning and end dates each year by contacting the Islamic Center of Virginia.  The Chief of Corrections Operations (CCO) issues

---

[2]    The defendants support their motion with the following affidavits from individuals:  Virginia Department of Corrections (VDOC) Western Regional Ombudsman C. Parr, Mem. Supp. Mot. Summ. J. Attach. 1, Parr Aff., ECF No. 26-1; KMCC Institutional Programs Manager (IPM) L. Meadows, *Id*. at Attach. 2, Meadows Aff., ECF No. 26-2; KMCC Counselor K. Breeding, *Id*. at Attach. 3, Breeding Aff., ECF No. 26-3; and VDOC Operations Support Manager M. Welch, *Id*. at Attach. 4, Welch Aff., ECF No. 26-4.

a memorandum, providing guidance for the observance of the fast, including the dates of the observance and the deadline for inmates to register for participation. In 2022, the CCO's memorandum indicated that Ramadan would be observed from sunset on the evening of April 1, 2022, until sunset on May 1, 2022. The deadline to register to participate in the fasting observance was March 1, 2022. The memorandum directed wardens to ensure that inmates were informed of this timeline. It also provided that "[i]nmates who transfer from one institution to another while participating in the Ramadan/Month of Fasting observance may request to participate at the receiving institution if the observance is available there." Meadows Aff. Enclosure A, ECF No. 26-2.

On February 4, 2022, defendant Meadows issued a memorandum to KMCC inmates indicating the start and end dates for the Ramadan fast observance and advising inmates to sign up for participation, in writing, by March 1, 2022. Meadows directed staff to post the memo in the KMCC housing units by the telephones and in the locked bulletin boards. On Monday, February 7, 2022, a counselor advised Meadows by email that the memo had been "posted in KMCC B Building (Sanders' housing unit)." Meadows Aff. ¶ 6, ECF No. 26-2.

Meadows' job duties require him to keep records about inmate participation in religious observances. Inmate requests to participate in the Ramadan observance are forwarded to him, and he coordinates with the KMCC chaplain to determine

eligibility.  When Meadows receives a request, he provides the inmate with a date-stamped copy to confirm receipt of that request.  Meadows then creates a list of inmates who are approved to participate in the Ramadan observance.  He posts a copy of that list in the inmate housing units twenty-one days before the observance begins.

According to the defendants, compliance with the Ramadan signup deadline is necessary to ensure that VDOC has adequate time to procure special foods and schedule service of appropriate meals for all fasting participants of different faiths. During this observance, VDOC offers a variety of meal options to meet dietary needs of religious groups that participate in the fast, including Common Fare meals, sealed foods, and NOI-specific meals.  For the 2022 fast observance, 2,592 inmates signed up to participate.  To accommodate these religious requests, VDOC had to procure food for more than 230,000 meals, to be distributed to facilities across the state and then prepared and served according to the Ramadan fasting schedule.  Providing this specialized accommodation requires compiling a detailed list of participants well in advance of the start of the fast itself — hence, the deadline to register for participation is set weeks earlier.  In particular, inmates must register by the signup deadline in order to receive bag meals during the Ramadan observance.

An inmate who misses the Ramadan registration deadline is not prohibited from observing the fast by other means.  A commissary at KMCC offers halal items

year-round for inmates to purchase with their own funds.  They may then consume such food items in their cells in accordance with the fasting schedule.

It is undisputed that Meadows did not receive a request from Sanders to participate in Ramadan by the registration deadline of March 1, 2022.[3]  Sanders claims that a chaplain told him that signup for Ramadan had been extended until March 17, 2022.[4]  Meadows states that he had no knowledge whether the chaplain misrepresented the signup deadline to Sanders or not.  Meadows is responsible for providing the final number of participants to the commissary so officials can order sufficient food for the KMCC Ramadan accommodations.  Because Meadows did not receive a timely request from Sanders, he could not place Sanders on the list of

---

[3]   The verified Complaint alleges that Sanders filed a request for Ramadan participation on March 10, 2022.  Meadows testifies that he "did not receive a request from Sanders to participate in Ramadan until March 10, 2022 (9 days after the deadline to sign-up to participate)."  Meadows Aff. ¶ 9, ECF No. 26-2.  In a counter affidavit in response to the defendants' motion, however, Sanders states that he "submitted [his] initial request to participate in Ramadan on March 3, 2022," and that Meadows denied his request on March 4, 2022, ECF No. 29, at 2.  Because it is undisputed that Sanders did not file a request by the required deadline of March 1, 2022, I do not find material the parties' disputes over when Sanders filed the request.

Sanders also asserts in his counter affidavit that Meadows committed perjury by stating that he did not receive Sanders' initial request for Ramadan participation until March 10, 2022.  On this basis, Sanders demands that Meadows' affidavit be stricken from the record altogether.  Yet, Sanders in his Complaint, signed under penalty of perjury, also stated that he filed his initial request on March 10, 2022.  I find no basis on which to strike either party's pleading.  Furthermore, Sanders cannot bring a criminal charge of perjury against Meadows since a private citizen has no right to criminal prosecution of another. *Sattler v. Johnson*, 857 F.2d 224, 227 (4th Cir. 1988).

[4]   The chaplain is not a defendant in this lawsuit.

Ramadan participants at KMCC.  He states that adding inmates to the Ramadan list after the deadline contradicts the VDOC's advance planning and could result in a lack of adequate supplies to accommodate the dietary needs of participant inmates who signed up by the March 1, 2022, deadline.

On March 19, 2022, Sanders filed a written complaint, claiming that the chaplain had told him about the wrong deadline for Ramadan signups.  Sanders also alleged that the memo stating the correct deadline of March 1, 2022, was not posted in the secured bulletin board space and that he had learned on March 4, 2022, that he had not been approved for Ramadan participation.  Meadows responded to Sanders' written complaint on April 1, 2022, stating that the signup deadline of March 1, 2022, had been set by VDOC headquarters and that the memo had been posted in Sanders' KMCC housing unit on February 7, 2022.

On April 3, 2022, Sanders submitted a regular grievance about being denied participation in Ramadan.  On April 5, 2022, defendant Breeding rejected this filing as a request for services, indicating that Sanders had missed the deadline for Ramadan signup.  Sanders appealed this intake decision, and defendant Parr upheld the ruling.

On April 21, 2022, Sanders submitted a regular grievance alleging that the memo about Ramadan participation was not posted in a secure bulletin board, that Meadows did not personally post the memo, and that Sanders did not see the memo

within the time when he could have signed up for Ramadan participation.  On April 26, 2022, defendant Breeding denied intake of Sanders' regular grievance because it was a request for services.  Breeding's response also indicated that VDOC headquarters set the signup deadline for Ramadan as March 1, 2022.  Sanders did not appeal this intake decision.  Breeding and Parr have stated that their authority to review grievance intake does not extend to granting or denying an inmate's request to participate in the KMCC Ramadan fasting accommodations.

Liberally construing Sanders' remaining claims in the Complaint, he contends that Meadows' enforcement of the Ramadan signup deadline placed a substantial burden on Sanders' right to free exercise of his religious Ramadan fasting practice and that by not making an exception for him, Meadows, Breeding, and Carr failed to prevent the violation of his constitutional rights.  Sanders contends that Meadows, as "IPM of KMCC" allegedly knew that Sanders was a devout Muslim who was on the list for Jumah prayer services every Friday.  Compl. ¶ 26, ECF No. 1.  Sanders also argues that after receiving Sanders' Ramadan participation request, Meadows had thirteen days before Ramadan started to make arrangements for Sanders to participate in the fast but failed to do so.

In response to the summary judgment motion, Sanders submits a verified counter affidavit.  Meadows states he instructed staff to place Ramadan schedule memos inside the locked bulletin boards and beside the telephones.  But according

to Sanders, those memos were merely taped to the wall in his housing unit and later removed by offenders.  Sanders also asserts that Meadows had discretion to allow him to participate in Ramadan, based on the policy that allows inmates arriving from other VDOC facilities after the signup deadline to be granted Ramadan participation. Sanders contends that he did not have timely notice of the Ramadan sign-up deadline, that meals required for his Ramadan observance as a Sunni Muslim are no different than the meals served to the general population (except for the extra bag meal), and that everyone at the prison is served the Eid feast that ends the Ramadan observance.  Finally, Sanders claims that being expected to buy his own halal meal items from the commissary to eat in his cell during fasting hours was a substantial burden for him because of his lack of funds to do so.

I. Discussion.

A.

Rule 56 of the Federal Rules of Civil Procedure provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  To preclude summary judgment, a nonmovant must present a "genuine" dispute as to a material fact "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In considering a defendant's summary judgment motion, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party," and the movant defendant "has the initial burden to show absence of evidence to support the nonmoving party's case." *Shaw ex rel. Bowen v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The court "may not weigh the evidence or make credibility determinations." *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019).[5]

To avoid summary judgment, a party must "must set forth specific facts showing that there is a genuine [factual] issue for trial" on which the jury could find in his or her favor. *Anderson*, 477 U.S. at 248. A pro se litigant's verified complaint or other verified submissions must be considered as affidavits and may defeat a motion for summary judgment "when the allegations contained therein are based on personal knowledge." *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021). The court's summary judgment inquiry is whether the evidence, taken in the light most favorable to the nonmoving party, "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014). The non-moving party may not rely on beliefs, conjecture, speculation,

---

[5]  I have omitted internal quotation marks, alterations, and citations here and throughout this Opinion, unless otherwise noted.

or conclusory allegations to defeat a motion for summary judgment.  *Baber ex rel. Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir.1992).

B.

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  To state a claim for violation of rights secured by the Free Exercise Clause, an inmate, "must demonstrate that: (1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion." *Wilcox v. Brown*, 877 F.3d 161, 168 (4th Cir. 2017).  For constitutional purposes in this context, such a burden is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006). The plaintiff bears the initial burden of establishing that the defendants' actions substantially burdened his exercise of religious practice.  *Dellinger v. Clarke*, 172 F. Supp. 3d 898, 902 (W.D. Va. 2016).

"[A]t a minimum the substantial burden test requires that a . . . plaintiff demonstrate that the government's denial of a particular religious . . . observance was more than an inconvenience to one's religious practice."  *Id.*  Thus, "[n]o substantial burden occurs if the government action merely makes the religious exercise more expensive or difficult or inconvenient but does not pressure the

adherent to violate her religious beliefs or abandon one of the precepts of her religion." *Rountree v. Clarke*, No. 7:15CV00220, 2017 WL 657551, at *4 (W.D. Va. Feb. 16, 2017) (quoting *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 739 (6th Cir. 2007)) (unpublished).

Even when an inmate shows that a prison regulation has placed a substantial burden on his religious practice, the inmate's right must be balanced against the state's interests in administering its prisons. *Washington v. Harper*, 494 U.S. 210, 223 (1990). Courts must defer to the expertise of prison officials in crafting policies addressing those problems, such as security, discipline, and efficient use of limited resources; therefore, a prison regulation that substantially burdens inmates' religious practices is, nevertheless, "'valid if it is reasonably related to legitimate penological interests.'" *Lovelace*, 472 F.3d at 199 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To make this determination, the court must consider four factors:

> (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right . . . remain open to prison inmates . . ."; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action.

*Id.* at 200 (quoting *Turner*, 482 U.S. at 89–92). The plaintiff carries the burden of proof under the *Turner* rational basis analysis to disprove the validity of the prison regulation at issue. *Jehovah v. Clarke*, 798 F.3d 169, 176 (4th Cir. 2015).

C.

As an initial matter, defendants Breeding and Parr are entitled to summary judgment.  It is well established that liability will lie under § 1983 only "where it is affirmatively shown that the official charged acted personally" in the violation of the plaintiff's rights.  *Wilcox*, 877 F.3d at 170 (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).  Sanders offers no evidence to dispute the sworn statements by Breeding and Parr that they had no authority to place an inmate on the list for participation in the Ramadan fast at KMCC in 2022.  Rather, the evidence shows that VDOC administrative officials issued the memo stating the dates of the 2022 Ramadan fast observance and mandating that inmates' signup for the observance "must be completed by March 1, 2022."  Meadows Aff. Encl. A, ECF No. 26-2.  Breeding and Parr merely addressed Sanders' grievances asking for an exception to that signup deadline, a request for services that Breeding and Parr could not provide to him.  Their rejections of Sanders' grievances or appeals did "not cause or contribute to [a constitutional] violation."  *Brown v. Va. Dep't of Corr.*, No. 6:07cv33, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009).

I also conclude that Meadows is entitled to summary judgment.  First, the evidence does not show that Meadows knowingly took any action that caused Sanders to miss the signup deadline.  Meadows, as IPM, was responsible for having the Ramadan memo posted for inmates to see, including the signup deadline of

March 1, 2022. Meadows states that he directed staff to post copies of the Ramadan memo in locked bulletin boards and beside the telephones in the housing areas. Staff reported to Meadows on February 7, 2022, that copies of the memo had been posted in B Building, Sanders' housing unit. Perhaps Meadows could have walked through every housing area to confirm that the memo was posted where inmates would be sure to see it. Perhaps he should have verified that the chaplain was aware of the correct signup deadline. However, Meadows' failure to take these steps to double-check the responsibilities of others constituted, at most, inadequate oversight or negligence. Officials' negligent actions are not sufficient to support a claim that Meadows' actions regarding the posting of the Ramadan memo and deadline violated Sanders' constitutional rights. *Lovelace*, 472 F.3d at 201 (holding that "negligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause").

Second, being denied participation in the prison-run Ramadan meal service did not substantially burden Sanders' ability to exercise his religious fasting practice. He had access to purchase all his food items for that month from the commissary to eat in his cell according to the Ramadan fasting schedule. Thus, prison officials' enforcement of the signup deadline did make Sanders' religious practice more expensive and difficult. These frustrations alone, however, are not sufficient to constitute a substantial burden on his religious practice — a required element of a

First Amendment free exercise claim, so long as prison practices or the defendants' actions did not pressure Sanders to violate or abandon his beliefs. *Rountree*, 2017 WL 657551, at *4. Sanders complains that this alternative to purchase his own food for the fast substantially burdened his religious practice, because he did not have sufficient funds to do so. His lack of funds, however, was personal to him and was not caused by the challenged policy to enforce the Ramadan signup deadline.

Third, even if Sanders could show that this policy substantially burdened his religious practice of Ramadan, the defendants offer evidence showing that enforcement of the signup deadline is rationally related to legitimate state interests under the *Turner* standard. As discussed, staging Ramadan accommodations in 2022 for VDOC inmates was a huge undertaking, involving ordering for and preparing 230,000 meals specific to different faith groups for the month-long observance. Particularly, supplying the bag meals (far different from the normal facility meal program) depend on inmates' advance registration. The VDOC has demonstrated legitimate interests in the efficient use of funds, staff efforts, and advance planning in accomplishing this complicated task for multiple VDOC facilities. *Williams v. Morton*, 343 F.3d 212, 220–21 (3d Cir. 2003) (finding that simplified food service, security, and budgetary concerns are legitimate penological interests). The

rigorously enforced signup deadline, weeks in advance of the start of the Ramadan observance, is rationally related to furthering these interests. [6]

Sanders complains that since he expressed a desire to observe some weeks before the month-long Ramadan fast began, Meadows should have made an exception for him. Sanders offers no evidence that Meadows set the signup deadline or that he had discretion to allow late signups for a full month of fasting accommodations. Rather, Sanders argues that changing his meal schedule and providing a bag meal every night would not have been that difficult. His mere conclusory assertions about the ease of making such an exception is in direct contradiction of the defendants' evidence about the weeks of advance preparation and planning it takes to accomplish such accommodations. Sanders' speculative beliefs to the contrary are not sufficient to defeat summary judgment. *Baber*, 977 F.2d at 874–75.

---

[6] In this case, the defendants support the VDOC signup deadline by offering specific numbers of inmates, various faith groups, and thousands of meals for which VDOC staff had to prepare for Ramadan accommodations in 2022. These particularized facts distinguish this case from *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005). There, the district court dismissed the First Amendment claims because the plaintiff had not exhausted administrative remedies. *Id.* at 583. The court of appeals disagreed and then went to the merits of the Ramadan claims, finding summary judgment inappropriate because the defendants had not offered sufficient evidence about the reasons for the signup deadline. *Id.* at 585. Sanders' case is more similar to the factual scenario in *Riley v. Ewing*, No. 15-CV-592-JDP, 2019 WL 188511, at *6–7 (W.D. Wis. Jan. 14, 2019), *aff'd*, 777 F. App'x 159 (7th Cir. 2019) (unpublished), in which the defendants provided extensive detail about the planning required for Ramadan accommodations, particularly for the overnight bag meals, and were awarded summary judgment.

As stated, Sanders could celebrate the fast through commissary purchases. And he himself states that the entire prison partakes in the feast at the end of the fast. Thus, the signup deadline policy did not deprive him of all forms of exercising his faith, including attendance of weekly Jumah services.  Accommodating Sanders' fasting despite his failure to comply with the signup deadline would have adversely affected staff, requiring them to take extra measures every day during the fast to serve his meals and prepare a bag meal after sundown, perhaps without adequate supplies.  Further, making such an exception for one inmate who missed a well-publicized deadline might have resulted in insufficient meals for inmates who had registered on time.  It might also have encouraged others to seek similar exceptions instead of following the schedule that allows for advance planning prison officials require to prepare for the complicated accommodations of this religious observance. I find no easy alternative to strict enforcement of the signup deadline as the means to ensure that officials have time and resources to accommodate thousands of inmates' observance of Ramadan.

Under the *Turner* standard, I conclude that even if enforcing the signup deadline burdened Sanders' religious practice, that prison policy was rationally related to and furthered legitimate prison interests in efficiency and consistency.  I find no genuine issue of material fact in dispute on which Sanders could prove that the defendants violated his First Amendment right to free exercise of his religious

beliefs.[7]  Therefore, the defendants are entitled to summary judgment as a matter of law, and I will grant their motion.

### III.  CONCLUSION.

In accordance with the foregoing, it is **ORDERED** that the defendants' Motion for Summary Judgment, ECF No. 25, is GRANTED.

A separate Judgment will issue herewith.

DATED:   September 23, 2024

/s/  JAMES P. JONES
Senior United States District Judge

---

[7] Sanders vaguely argues in the Complaint that his Ramadan claims also arise under the Fourteenth Amendment.  However, I find it clear that his free-exercise claims arise under the First Amendment and gain nothing by attaching additional constitutional labels. *Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that constitutional claims must be addressed under the most applicable provision).

-17-